1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN NEMEC, | Case No. 5:14-cv-01343-PSG |
| Plaintiff, | **ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND DENYING MOTIONS TO DISMISS AND STRIKE** |
| v. | |
| FORREST DAVID LINEBARGER, et al., | |
| Defendants. | **(Re: Docket Nos. 85, 86, 93 and 105)** |

Before the court are various motions arising out of the first amended complaint, including motions to dismiss, compel arbitration, strike and remand.  Because the parties agreed that disputes like this one must be resolved in arbitration, the court grants the motion to compel arbitration and remands the petition to confirm the arbitration award.

**I.**

The origins of this suit lie in a home renovation project gone awry.  The project began after homeowners and Cross-Complainants Justin Schuh and Catherine Nguyen signed a contract for construction services with Defendant Reliance Management Group, the project's general contractor.  Upset at the project's mounting delays and costs, the Schuhs refused to make further payments.  It turns out that the Schuhs were not the only ones unhappy.  So, too, were various third parties who claim they did work for Reliance Management Group but were never paid.  After

1

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

United States District Court
For the Northern District of California

purchasing the accounts receivable of these third parties, Plaintiff Steven Nemec filed a complaint against not only Reliance Management Group, Defendant Forrest Linebarger and related entities (collectively, "Reliance"), but also the Schuhs.  In his initial complaint, Nemec claimed violations of the Racketeer Influenced Corrupt Organization Act, breach of contract, account stated, conversion, unfair business practices and fraud.[1]  The Schuhs then filed a cross-complaint against Reliance asserting the same six separate causes of action[2]—despite an arbitration clause contained in their contract with Reliance[3] and pending arbitration in which Reliance sought to force the Schuhs to pay outstanding invoices.[4]

Reliance demanded that the Schuhs pursue their claims in the pending arbitration.  When the Schuhs refused, Reliance filed motions to compel arbitration and to dismiss both the complaint and the cross-complaint.[5]  The court denied the motions based on the suggestion by Nemec and the Schuhs that the arbitration clauses were part of the fraud alleged, even though no such suggestion could be found in their complaints.  As the court explained, when an arbitration agreement is suggested to have been fraudulently obtained or to be a part of a fraudulent scheme, the Ninth Circuit has held that trial courts commit reversible error if they order arbitration because of deficiencies in the

---

[1] *See* Docket No. 2.

[2] *See* Docket No. 7; Docket No. 89 at 1.

[3] *See* Docket No. 47-1.

[4] *See In the Matter of the Arbitration between Reliance Management Group, Inc. vs. Justin Schuh and Catherine Nguyen,* AAA Construction Industry Arbitration Tribunal Case No. 74 527 E 00570 13 LGB.  David N. Hoadley of the American Arbitration Association issued an arbitration Award on April 25, 2014.  *See* Docket No. 94-1 at ¶ 9 and Exhibit C.  Although the Schuhs sought a temporary restraining order enjoining the arbitration, the court declined to enter such an order.  *See* Docket Nos. 19, 56.

[5] *See* Docket Nos. 26, 27, 30.

2

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

pleadings.[6]  In light of the absence of any such suggestion in their complaints, the court also granted

leave to amend while preserving Reliance's right to challenge the sufficiency of the complaint as

amended.[7]  Reliance and Nemec then settled,[8] but the Schuhs' filed a first amended complaint as

was permitted.[9]  In the meantime, after Relinace petitioned the state court to confirm the award

issued by the arbitrator, the Schuhs removed that action to this court in this case.[10]

## II.

This court has jurisdiction under 28 U.S.C. § 1331.  The parties consented to magistrate

judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[11]

## III.

Among the parties' disputes, the issue of whether arbitration is required is paramount.  If

the arbitration clause in the parties' agreement is valid, and the dispute falls within the scope of the

arbitration clause, the case and remaining motions belong in arbitration.[12]  The Schuhs, as the

parties resisting arbitration, bear the burden of proof.[13]  Both federal and California law place a

---

[6] *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1190 (9th Cir. 1986) (concluding that "the district court abused its discretion in denying Letizia the opportunity to amend his complaint and to prove his allegations concerning the enforceability of the arbitration agreement.").

[7] *See* Docket No. 72 at 2.

[8] *See* Docket Nos. 78, 83.

[9] *See* Docket No. 76.

[10] *See* Docket No. 103.

[11] *See* Docket Nos. 4, 8, 16.

[12] *See Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 710–711 (2011); *Willis v. Nationwide Debt Settlement Group*, 878 F. Supp. 2d 1208, 1214 (2012); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[13] *See Green Tree Fin'l Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer v. Interstate/ Johnson Lane, Corp.*, 500 U.S. 20, 26 (1991).

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

strong presumption in favor of arbitration, and espouse a general policy favoring the recognition and enforcement of arbitration agreements.[14]

     This initial question of arbitrability is ordinarily an issue for the courts, not the arbitrator.[15] The parties must "clearly and unmistakably" provide in their contract that the arbitrator, and not the court, will decide whether a particular dispute is arbitrable.[16] Finding no suggestion in the contract that the parties assigned the arbitrability question itself to an arbitrator, such as rules empowering the arbitrator to decide issues of arbitrability, the court must resolve that question here and finds that this dispute does indeed belong in arbitration.

     ***First,*** the contract sets out a broad arbitration clause. The arbitration clause was typeset in bold and separately initialed immediately below the statutory language by both parties.[17] The clause says: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under

---

[14] *See* 9 U.S.C. § 2 (providing that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); Cal. Code Civ. P. § 1281 (providing that pre-dispute arbitration agreements are "valid, enforceable and irrevocable, save upon grounds as exist for the revocation of any contract"); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011) (finding a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract . . . [courts] must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms"); *Cione v. Foresters Equity Services, Inc.,* 58 Cal. App. 4th 625, 642 (1997).

[15] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("[The] first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute").

[16] *See Hartnell Community College Dist. v. Superior Court*, 124 Cal. App. 4th 1443, 1449 (2005); *Dream Theater, Inc. v. Dream Theater,* 124 Cal. App. 4th 547, 552 (2004) ; *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (2006); *Greenspan v. LADT, LLC,* 185 Cal. App. 4th 1413, 1442 (2010) (finding that when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator).

[17] *See* Docket No. 94-2 at Article 11.2.

4

United States District Court
For the Northern District of California

its Construction Industry Arbitration Rules."[18]  In considering whether the Schuhs' claims fall within the scope of the arbitration clause, this court must "focus on the factual allegations underlying [the] claims in the [c]omplaint."[19]  The Schuh's underlying allegations and overarching claims both "arise out of" and "relate to" the contract, requiring that such claims "shall be settled by arbitration."[20]  This clear language is not, as the Schuhs suggest, rendered ambiguous simply because the contract elsewhere references litigation, which might occur where, as here, a party initiates litigation notwithstanding the arbitration clause.  This is especially true given that courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration."[21]

        *Second,* the Schuhs do not claim fraud in the execution of the contract as a whole, and nothing suggests that the arbitration clause itself was procured through fraud.  The Schuhs were asked twice to initial the arbitration clause and did so after receiving the page containing the clause in the mail.   Were the Schuhs able to show either that their execution of the agreement as a whole or that their initials indicating their assent to arbitration were fraudulently procured, arbitration

---

[18] *See* Docket No. 47-1.

[19] *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 378 (1st Cir. 2011).

[20] *Cf., Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 223, 241-42 (1987) (holding that parties could be compelled to arbitrate RICO claims relating to, *inter alia*, making false statements and omitting material facts where brokerage agreement stated, "any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration" (internal quotation marks omitted)).

[21] *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989); *Granite Rock Co. v. International Broth. of Teamsters,* 561 U.S. 287, 298 (2010) (holding when parties "have agreed to arbitrate some matters pursuant to an arbitration clause . . . any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration").  *See also Cione v. Foresters Equity Services, Inc.,* 58 Cal. App. 4th 625, 642 (1997) (holding that arbitration should be ordered unless it may be said with positive assurance that arbitration clause is not susceptible of interpretation that covers asserted dispute—mere ambiguity, without more, will not act to bar arbitration).

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

might be avoided.[22]   But it is well-established that a claim of fraud in the inducement of the contract as a whole—like the claims here of a grand scheme of fraud or fraud permeating the transaction— does not prevent a court from enforcing a specific agreement to arbitrate.[23]  Put another way, in the absence of any evidence that the agreement as a whole was fraudulently executed, an arbitration provision can only be found unenforceable for fraud if the fraudulent conduct was directed at the arbitration provision itself.[24]

To meet their burden, the Schuhs highlight the illegality of the contract as whole (for example, the contract included a down payment labeled as a "retainer" of 5% of the contract price), their inability to acquire evidence of unlawful billing practices and the similar struggles of third parties in pursuing their own claims against Reliance.[25]  These allegations may all be true, but they do not specifically point to fraud in the inducement with regard to initialing the arbitration provision.

The Schuhs also allege Linebarger made fraudulent, material misrepresentations regarding the scope of the arbitration provision[26] by telling the Schuhs the arbitration provision was limited

---

[22] *See Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.,* 35 Cal. 3d 312, 323 (1983); *accord Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 934 (9th Cir. 1992).

[23] *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010); *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate— the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); *Rosenthal v. Great Western Fin. Securities Corp*., 14 Cal. 4th 394, 419, 425 (1996) (finding plaintiff "must show their apparent assent to the contracts— their signatures on [the] agreements— is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth").

[24] *See Prima Paint Corp.*, 388 U.S. at 403–404; *Prograph Intern. Inc. v. Barhydt,* 928 F. Supp. 983, 990 (N.D. Cal. 1996) ("A claim of fraudulent inducement to enter into a contract that happens to contain an arbitration clause is required to be referred to arbitration").

[25] *See* Docket No. 89 at 16-17.

[26] *See* Docket No. 76 at 5.

6

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

United States District Court
For the Northern District of California

to only matters involving billing questions.[27]  They state: "Linebarger also failed to inform Schuh that the arbitration provision included (1) any alleged construction defect issues and (2) that it would be binding based on the presentation of documents Schuh already possessed, without a hearing or the right to obtain documents or testimony from anyone in order to support their position at arbitration.  Rather, Linebarger misrepresented that the arbitration provision would be limited in scope to 'minor issues.'"[28]  But even if the court may properly consider parole evidence of these alleged misrepresentations in these circumstances,[29]  a misrepresentation of a contractual clause alone does not render the clause void when the allegedly defrauded party had a reasonable opportunity to discover the clause's actual terms.[30]  Although they claim Linebarger demanded that they sign the contract without providing any opportunity to review it, it is undisputed the Schuhs signed the arbitration clause only after receiving the clause language in the mail more than eleven days later, which gave them more than a reasonable opportunity to understand its terms.

---

[27] *See id.*

[28] *Id.*; *see also* Docket No. 47-2 at 2-3; Docket No. 89 at 19 ("Based upon oral representations made to the Schuhs by Forrest as to the scope of the arbitration provision and that it would not include construction defect allegations, the Schuhs signed this provision.  Had the Schuhs known that allegations of illegal contract terms, fraudulent billing practices or negligent construction were intended to be included in the alleged arbitration provision, the arbitration clauses of the 'contract' would never have been agreed to.  Thus, because Forrest misrepresented what was covered by the arbitration provision, the entire contract is invalid as there was no 'meeting of the minds' due to Reliance's fraudulent oral promises").

[29] *See Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.,* 971 F.2d 272, 280-282 (9th Cir. 1992) (holding that parol evidence of fraud or misrepresentation is admissible under California law, when directed at fraud "in the procurement of the instrument or some breach of confidence concerning its use") (citations omitted); *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Cr.*, 55 Cal. 4th 1169, 1174-75 (2013) ('[w]hen fraud is proven, it cannot be maintained that the parties freely entered into an agreement reflecting a meeting of the minds").

[30] *See Rosenthal*, 14 Cal. 4th at 419.

7

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

**Third**, nothing suggests that the arbitration clause is unconscionable.  Unconscionability is a question of law.[31]  California law requires that a contractual clause be both procedurally and substantively unconscionable to be unenforceable.[32]  The procedural inquiry examines any "oppression or surprise due to unequal bargaining power" with the agreement, and the substantive inquiry focuses on whether the agreement produces "overly harsh or one-sided results."[33]  A provision is substantively unconscionable if it "involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms."[34]  "[B]oth [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."[35]  This is a sliding-scale calculation, where neither procedural nor substantive unconscionability need be present to the same degree.[36]

---

[31] Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result").

[32] *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000) (*quoting A & M Produce v. FMC Corp.*, 135 Cal. App. 3d 473, 486-87 (1982)); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1269, 1280 (9th Cir. 2006); *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) ("[Unconscionability] has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results"); *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, 657 (2004) ("[T]he paramount consideration in assessing conscionability is mutuality.").

[33] *See Armendariz*, 24 Cal.4th at 114 (*quoting A & M Produce*, 135 Cal. App. 3d at 486-87; *Nagrampa*, 469 F.3d at 1280.

[34] *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998); *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1182 (C.D. Cal. 2012).

[35] *See Armendariz*, 24 Cal.4th at 114 (*quoting A & M Produce*, 135 Cal. App. 3d at 486-87; *Nagrampa*, 469 F.3d at 1280; *Parada v. Superior Court,* 176 Cal. App. 4th 1554 at 1570 (2009)).

[36] *See Nagrampa*, 469 F.3d at 1280; *Flores v. Transamerica*, 93 Cal. App. 4th 846 (2001).

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Schuhs allege the arbitration provision is procedurally unconscionable because of the "coercive" circumstances in which they signed the contract.[37] When they first saw the agreement, Linebarger "demanded the Schuhs sign the agreement within ten minutes of seeing it for the first time, or else the project would be delayed."[38] The Schuhs say they had no opportunity to negotiate any of the terms set forth by Linebarger and there was an absence of reasonable alternatives.[39] The Schuhs also point out Linebarger then did not provide the Schuhs with a copy of the agreement until six months after signing it,[40] and "Lineberger also failed to provide copies of the American Arbitration Association's rules, which is required by law when such rules are incorporated into an agreement, making the agreement to arbitrate procedurally unconscionable."[41] But the arbitration provision could hardly be said to be surprising or hidden, when it was called out in boldface type.[42]

---

[37] *See* Docket No. 76 at 7 ("Linebarger purposefully drafted a one-sided and unconscionable arbitration clause into Enterprises' agreements with the intent that any and all disputes, large or small, would be subject to arbitration. Said arbitrations were conducted with an arbitrator of Linebarger's choosing (the American Arbitration Association 'AAA') and precluding any of the necessary discovery to obtain the evidence which would show the fraudulent billing scheme, thereby granting Linebarger all of the power at the arbitration and allowing him to prevail"); *see id.* at 3; Docket No. 89 ("Linebarger coerced the Schuhs into signing the contract on the spot claiming it was necessary to do so in order to send Structural Integrated Panels ('SIPs') into production for a start date in two weeks. (Declaration of Justin Schuh, ¶13). However, there was no chance of hitting that start date. The Schuhs had been billed over $75,000 at that point, which was not what they had been told would happen. (Declaration of Justin Schuh, ¶19). The plans were not approved by the City and took several more months to get approved. (Declaration of Justin Schuh, ¶22)").

[38] *See* Docket No. 46 at 1; Docket No. 28 at 13; Docket No. 28-2; Docket No. 89-1 at ¶3.

[39] *See Abramson*, 115 Cal. App. 4th at 656 (holding that where an adhesive contract is oppressive, surprise need not be shown); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005); *Lima*, 886 F. Supp. 2d at 1182; *Flores*, 93 Cal. App. 4th at 853; *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002).

[40] *See* Docket No. 46 at 1; Docket No. 89-1 at ¶¶3, 8; *but see* Docket No. 94-1 at ¶ 6(i).

[41] Docket No. 76 at 5; Docket No. 89 at 18-19; *see, e.g., Fitz v. NCR Corp.*, 13 Cal. Rptr. 3d 88, 101 (Ct. App. 2004); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406-08 (2003).

[42] *See* Docket Nos. 28, 28-1.

9

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

1
2
3
4
5
6
7
8
9
10
11

**United States District Court**
For the Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

And as noted earlier, whatever the issues with the contract as a whole, the Schuhs did not initial the arbitration provision when the signed the contract under these iffy circumstances, but rather many days later, without objection, by mail.[43]

The Schuhs say the arbitration provision's terms are substantively unconscionable because they did not comply with all the mandatory requirements of Section 7159.[44]  Section 7159 governs all home improvement contracts and is intended as a protection for consumers in an economic area where there is an opportunity for unconscionable abuse by contractors.[45]  The Schuhs also note that Linebarger inserted language that the arbitration would take place before the American Arbitration Association, which is binding and does not necessitate a hearing for disputes under $10,000.[46]  The

---

[43] *See* Docket No. 94-2; Docket No. 94-4 at ¶ 3.

[44] *See id.*; *see* Docket No. 89 at 13.

[45] *See Calwood Structures, Inc. v. Herskovic,* 105 Cal. App. 3d 519, 522 (1980); *Tumlinson Group, Inc. v. Johannssen,* 2:09-cv-1089, 2010 WL 4366284, at *5 (E.D. Cal. Oct. 27, 2010); Cal. Bus. & Prof. Code § 7159 (a), (b) ("(a) (1) This section identifies the projects for which a home improvement contract is required, outlines the contract requirements, and lists the items that shall be included in the contract, or may be provided as an attachment. . . .  (b) For purposes of this section, "home improvement contract" means an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner or between a contractor and a tenant . . . for the performance of a home improvement, as defined in Section 7151, and includes all labor, services, and materials to be furnished and performed thereunder, if the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500)"); Cal. Bus. & Prof. Code § 7151 (defining "home improvement" as "repairing, remodeling, altering, converting, or modernizing of, or adding to, residential property."  "Home improvement" also includes the "installation of home improvement goods or the furnishing of home improvement services").

[46] *See* Docket No. 89 at 17-18; Docket No. 28 at 15; Docket No. 28 (arguing for unconscionability because Linebarger "manipulated the CIAR Rules to reduce the amount in controversy to less than $10,000 so the Fast Track provisions applied, precluding any hearing or opportunity for the Schuhs to set forth verbal agreements."  This meant the Schuhs could not engage in discovery to obtain documents necessary to show Linebarger's RICO violations, negligence, and fraudulent billing practices.  However, this does not have to do with the arbitration clause itself); *see* Docket No. 94 at 4 (arguing the Schuhs' assertions do not demonstrate that they did not agree to arbitrate construction defect issues).

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

1   Schuhs say this favored Linebarger and undermined their reasonable expectations:  the Schuhs

2   were not advised of all the implications of the extraneous language,[47] such as precluding necessary

3   discovery to obtain evidence showing the fraudulent billing scheme.[48]

4          None of this, however, shows any substantive unconsionability.  Because the contract is a

5   new construction contract, Cal. Bus. & Prof. Code § 7164, not Section 7159, would appear to

6   govern.[49]  While the two sections have different requirements for an arbitration clause, these

7   differences do not necessarily undermine the arbitration clause's validity.[50]  Even if the contract

8   were subject to and did not comply with Section 7159, the arbitration clause would not be "void

9   and unenforceable" but rather voidable.[51]  More fundamentally, the arbitration provision here is

10  bilateral and mutual, and both parties are equally bound.  When parties are bound equally by an

_____

11  [47] *See* Docket No. 89 at 15.

12  [48] *See id.*

13  [49] *See* Docket No. 86-2 at 3, Ex. A ("In Article 4.8 of the Contract, the parties agreed that 'for the purposes of this Contract, the replacement of over 50% of exterior walls shall constitute this as new home construction.' (Dkt. # 86-2 at 3.) The permitting agency, the City of Mountain View Building Department, classified the project as a new single-family dwelling.  The permit itself states 'REBUILD EXISTING 1496 SQFT & ADD 763 SQFT 1ST & 2ND FLOOR ADDITION – PROJECT DEEMED NEW SFR.'  The term 'new SFR' means 'new single-family residence.' (*See* Dkt. # 60-1 at ¶ 7(b) & Dkt. # 60-2); and The Scope of Work (Exhibit A to the Contract) describes a full rebuild of the dwelling, "includ[ing] new foundation work, SIP [manufactured wall] and conventional framing, rough and finish electrical, rough and finish plumbing, rough and finish mechanical, insulation, providing a watertight roof ").

14  [50] *See Asdourian v. Araj*, 38 Cal. 3d 276, 292 (1985) (*superseded on other grounds by* Cal. Bus. & Prof. Code § 7031) (finding "no indication that the Legislature intended that all contracts made in violation of section 7159 are void"); *Hinerfeld-Ward, Inc. v. Lipian*, 188 Cal. App. 4th 86, 93 (2010) (enforcing oral home improvement contract against "well-educated" homeowners on a "high-end" project); *Davenport & Co. v. Spieker*, 197 Cal. App. 3d 566, 571 (1988) (enforcing non-compliant contract against homeowner who was sophisticated in real estate matters and negotiated change orders); *Tumlinson Group, Inc.*, 2010 WL 4366284, at *5 (refusing to bar recovery on oral change orders as a matter of law).

15  [51] *See Asdourian*, 38 Cal. 3d at, 292; *Hinerfeld-Ward, Inc*, 188 Cal. App. 4th at 93; *Davenport & Co.*, 197 Cal. App. 3d at 571; *Tumlinson Group, Inc.*, 2010 WL 4366284, at *5.

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

United States District Court
For the Northern District of California

arbitration agreement, the clause does not lack mutuality and is not substantively unconscionable.[52] Article 11.1 provides for arbitration and states simply that the arbitration shall be "administered by the American Arbitration Association under its Construction Industry Arbitration Rules."[53]  The Schuhs have not shown that the AAA rules are one-sided or overly harsh.

Having resolved that this dispute belongs in arbitration, the court sees no basis to exercise jurisdiction over Reliance's petition to confirm the arbitration award.  Nothing in the petition itself pleads a federal cause of action or establishes that diversity jurisdiction exists.[54]  The presence of a federal claim in the Schuhs' cross-complaint is irrelevant,[55] as is the court's supplemental jurisdiction.[56]

## IV.

Whatever the underlying merits of the Schuhs' claims, those claims were committed to arbitration by the language to which both sides in this dispute freely agreed.  Reliance's motion to compel arbitration is GRANTED; Reliance's motion to remand is GRANTED and all other pending motions are DENIED as moot.  The Clerk shall close the file.

---

[52] *See Tiri v. Lucky Chances, Inc.* 226 Cal. App. 4th 231, 247 (2014).

[53] Docket No. 94-2 at 6, Article 11.1.

[54] *See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14 (1951) (removability is determined from pleadings at the time of removal); *Franchise Tax Board of State of Calif. V. Construction Laborers Vacation Trust for Southern Calif.*, 463 U.S. 1, 10 (1983) ("a defendant may not remove a case to federal court unless *the plaintiff's complaint* establishes that the case 'arises under' federal law") (emphasis in original).

[55] *Cf. Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 n.2 (2002).

[56] *See Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006).

12

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE

1    **SO ORDERED.**

2    Dated: December 4, 2014

3                                          _____
                                           PAUL S. GREWAL
4                                          United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:14-cv-01343-PSG
ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND REMAND AND
DENYING MOTIONS TO DISMISS AND STRIKE